UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
MOHAMMED TAKIE,

                Petitioner,

                                        MEMORANDUM AND ORDER

      -against-                                  19-CV-5308 (RPK)

DOWNSTATE CORRECTIONAL FACILITY
SUPERINTENDENT,

                Respondent.
----------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

    *Pro se* petitioner Mohammed Takie filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, claiming that his 17-year sentence for attempted murder in the second degree deprived him of his constitutional right to due process. In particular, he contends, the sentencing court deprived him of due process because it enhanced his sentence based on an ambiguous term in his plea bargain and because he did not fully understand the plea bargain's terms. For the reasons set forth below, the petition is DENIED.

BACKGROUND

    Petitioner attacked his wife Lilawattie Mohammed with a knife, stabbing and cutting her repeatedly in the neck and jaw. Ms. Mohammed suffered multiple deep lacerations requiring surgery. The lacerations caused permanent nerve damage and scarred her face, neck, and hands. Miraculously, Ms. Mohammed was able to contact law enforcement. Officers responded to her home and found petitioner in front of the house with a self-inflicted neck wound. Petitioner was arrested and transported to the hospital. He was charged with Attempted Murder in the Second

Degree (in violation of New York Penal Law § 125.25[1]), Assault in the First Degree (in violation of New York Penal Law § 120.10[1]), two counts of Assault in the Second Degree (in violation of New York Penal Law § 120.05[2]), and Criminal Possession of a Weapon in the Fourth Degree (in violation of New York Penal Law § 265.01[2]).

During jury selection, petitioner agreed to plead guilty to Attempted Murder in the Second Degree in exchange for a reduced sentence of 13 years of imprisonment with five years of post-release supervision. The court conducted a plea colloquy, over the course of which petitioner affirmed that he understood his rights, the nature of the proceedings against him, what he was pleading guilty to, and the conditions of his plea. *See* Plea Colloquy Tr. 3:7-13:8 (Dkt. #7-5).[1] During the colloquy, after finding that petitioner knowingly and voluntarily waived his rights, the court asked petitioner if he attempted to intentionally cause his wife's death by cutting her with a knife. *Id.* at 10:18-24. Petitioner replied, "Yes, your Honor." *Id.* at 10:25. The court accepted petitioner's plea and advised petitioner that he would be interviewed by the Department of Probation prior to sentencing. The court admonished petitioner that in order to receive the agreed-upon sentence of 13 years, he needed to "cooperate completely" with the Department of Probation, answer the Probation Department's questions "truthfully," and not deny attempting to kill his wife. *Id.* at 11:23-12:11. Finally, the court warned petitioner that "[i]f there's anything that you tell them that's not what you told me you are not getting a sentence of 13 years in jail; you're getting 17 years which is what the people have been asking for all along." *Id.* at 12:13-16. When asked if he understood these conditions, petitioner replied, "Yes ma'am." *Id.* at 12:18.

When interviewed by the Probation Office several days after his plea, petitioner provided a new account of the offense that appeared designed to minimize his culpability. Petitioner claimed

---

[1] Citations to documents in the record follow the pagination assigned by ECF rather than the documents' internal pagination.

2

that upon returning home after running an errand, he heard another man talking to his wife, which prompted an argument. Sentencing Hr'g Tr. at 23:23-24:7 (Dkt. #7-5). Petitioner then claimed he "blacked out" and "woke up" in the hospital, where "he was told that he had cut his wife." *Id.* at 24:6-13; *see* Br. for Defendant-Appellant at 10, *People v. Takie*, 172 A.D.3d 1249 (2d Dep't 2019), *lv. denied*, 33 N.Y. 3d 1109 (2019) (quoting PSR at 3) (Dkt. #7-3). At no point during the interview did petitioner admit to cutting his wife. Sentencing Hr'g Tr. 25:7-15, 30:5-11; 58:2-18; *see* Br. for Defendant-Appellant at 14.

The court held a sentencing hearing, at which it heard testimony from the Probation Officer and from petitioner. The Probation Officer recounted the statements that petitioner had made in his interview. She also testified that she had had no trouble understanding petitioner, that he was "very talkative," and that he appeared to understand her and answered all of her questions. Sentencing Hr'g Tr. 36:13-37:14. Petitioner contended in his testimony that he had not fully understood some of the Probation Officer's questions, and he suggested that his account to the Probation Officer was consistent with his account to the court. *Id.* at 44:23-51:8. On cross-examination, he acknowledged that English is his native and only language. *Id.* at 51:20-23.

The court concluded that petitioner had understood the conditions of his plea bargain but had violated those conditions by providing the Probation Officer with a materially different account of his offense that minimized his own culpability and omitted any admission of guilt. *Id.* at 77:11-79:1. Relying on the testimony at the sentencing hearing and the court's experience in dealing with petitioner over several years, the court concluded that while petitioner was occasionally "ungrammatical," he was "a very informed and forceful advocate for himself" who "absolutely understands what is being said to him and what he is saying to other people." *Id.* at 74:19-24, 76:1-3. The court rejected petitioner's claim of a lack of understanding, describing that

3

claim as part of a "pattern of trying to get out from under." *Id.* at 78:2-4. After finding that petitioner had "failed to meet the very specific condition that the Court set forth" in an attempt to "soft pedal his responsibility," the court imposed an enhanced sentence of 17 years of imprisonment with five years of post-release supervision. *Id.* at 80:20-24.

Petitioner appealed on two grounds. First, petitioner argued that he did not violate a clear and unambiguous condition of his plea bargain. Br. for Defendant-Appellant at 17-23. He also asserted that under these circumstances, an enhanced sentence violated his state and federal due process rights. *Id.* at 18. Second, petitioner argued that a sentence of 17 years was excessive. *Id.* at 23-25. The Appellate Division affirmed petitioner's sentence. The court found that the record established that petitioner "acknowledged, understood, and accepted" the conditions on his plea, and that petitioner breached those conditions when he gave the Probation Officer an account of his crime that "conflicted with what he had stated in court." *Takie*, 172 A.D.3d at 1250. As a result, the Appellate Division found that the trial court "was not bound by its original promise" and was free to impose an enhanced sentence of 17 years. *Ibid.* The Appellate Division further found that this sentence was not excessive. *Ibid.* The New York Court of Appeals denied petitioner's application for leave to appeal. *See People v. Takie*, 33 N.Y.3d 1109 (2019).

In his habeas petition, petitioner again claims that his sentence was unfairly enhanced based on ambiguous plea terms, relying on principles of due process under the federal Constitution. *See* Pet. at 6 (Dkt. #1); Reply Br. at 3, 7-10 (Dkt. #11). He also suggests for the first time that he was deprived of federal constitutional rights because his plea bargain was not knowing and intelligent, arguing that he "did not clearly understand" the terms imposed by the sentencing court regarding "the Probationary statements in comparison to the plea allocution." Pet. at 7.

4

DISCUSSION

Petitioner has not demonstrated an entitlement to relief on either of his habeas claims.

Habeas Review of State Court Judgments

Under 28 U.S.C. § 2254, subject to exceptions not applicable here, a federal court may only review a petition for a writ of habeas corpus on behalf of a person who is in custody based on a state court judgment if the applicant has exhausted the remedies available to him in the courts of his state. 28 U.S.C. § 2254(b)(1)(A). "State remedies are deemed exhausted when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court . . . and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Att'y Gen. of State of New York*, 280 F.3d 87, 94 (2d Cir. 2001) (citing *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)).

Federal review of state convictions is circumscribed by the related doctrine of procedural default. "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)) (emphasis omitted). "Out of respect for finality, comity, and the orderly administration of justice," federal courts generally may not entertain such defaulted claims through habeas unless the petitioner shows "cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). A state prisoner who fails to make those showings can only receive habeas review if he "advance[s] . . . a credible and compelling claim of actual innocence," *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019) (quoting *Rivas v. Fischer*, 687

F.3d 514, 540 (2d Cir. 2012)), such that "failure to consider the claim[] will result in a fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750.

AEDPA also constrains federal review of claims that have been preserved. So long as a state court adjudicated a litigant's claim on the merits, a federal court may grant habeas relief only if the state court's judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law" refers to "the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (internal alterations omitted). A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if the state court decides a case differently from how the Supreme Court decided a case "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 406. A decision involves an "unreasonable application" of clearly established federal law if the state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407.

Since AEDPA permits a federal court to vacate a state judgment based on the state court's determination of the facts only if the state court's determination was "unreasonable," a federal court must "more than simply disagree" with a factual finding in order to overturn a state court's decision. *Washington v. Schriver*, 255 F.3d 45, 55 (2d Cir. 2001) (quoting *Marshall v. Lonberger*,

6

459 U.S. 422, 432 (1983)). "If the state record is 'ambiguous' such that two different views of the facts find fair support in the record," AEDPA "mandates deference to the state court's fact-finding." *Ibid.* (citing *Wainwright v. Goode*, 464 U.S. 78, 85 (2d Cir. 2001)).

Claim 1 – Enhancing Petitioner's Sentence Violated the Due Process Clause because His Plea Bargain Was Ambiguous

Petitioner first contends that he was deprived of due process because his sentence was enhanced based on ambiguous terms imposed by the trial court as part of petitioner's plea bargain. This claim lacks merit under current Supreme Court precedent.

A. Exhaustion

Petitioner's references to federal due process in his state court briefs—though quite scant—were adequate to preserve his due process claim for federal consideration. As noted above, a habeas petitioner must generally present the factual and legal bases of his federal constitutional claim on direct appeal in order for a federal court to review that claim through habeas. *See Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (citing *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). The claim must be fairly presented to "each appropriate state court," including "a state supreme court with powers of discretionary review." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam)). The factual basis for a constitutional claim is fairly presented when a petitioner has "set forth in state court all of the essential factual allegations asserted in his federal petition." *Daye v. Att'y Gen. of State of New York*, 696 F.2d at 191 (citing *Picard*, 404 U.S. at 276). The legal basis is fairly presented when the petitioner "placed before the state court essentially the same legal doctrine he asserts in his federal petition." *Id.* at 192 (citing *Picard*, 404 U.S. at 276).

7

Here, petitioner appears to have done just enough to preserve a claim that his enhanced sentence violated federal due process guarantees because the terms of his plea bargain were ambiguous. Petitioner's federal due process claim rests on facts that he developed in his state court appeal. And while petitioner's brief to the Appellate Division focused on state law, *see* Br. for Defendant-Appellant at 17-23, it did contain a mention of "due process" that was coupled with a citation to the Fourteenth Amendment, *see id.* at 18. When petitioner sought discretionary review from the New York Court of Appeals after the intermediate state court rejected his appeal, petitioner focused principally on whether his enhanced sentence violated a state court decision addressing state statutory law, rather than federal (or state) due process. *See* Leave Application at 68 (Dkt. #7-3) (discussing *People v. Hicks*, 98 N.Y.2d 185 (2002)). But petitioner did include a reference to "due process" at the end of his leave application. And he enclosed a copy of his appellate brief and directed the Court of Appeals' attention to the portion of his brief that cited the Fourteenth Amendment. Respondent appears to have understood petitioner to be raising a federal due process claim, as respondent's brief addressed due process and extensively discussed a state precedent that concerns the federal right to due process. *See* Br. for Resp't at 49-55, *Takie*, 172 A.D.3d 1249 (discussing *People v. Outley*, 610 N.E.2d 356 (N.Y. 1993)) (Dkt. #7-3).

Taken together, petitioner's filings and respondent's replies clear the exhaustion bar. A litigant generally fulfills his duty to raise a constitutional claim before the state courts by directing those "courts to the specific provision of the Constitution relied on in his habeas petition." *Daye*, 696 F.2d at 192; *see Baldwin*, 541 U.S. at 32. While a "fleeting reference to a provision of the Federal Constitution or federal precedent" may not suffice to put state courts on notice of a federal claim, *Johnson v. Williams*, 568 U.S. 289, 299 (2013), petitioner's references to due process in this case were amplified by respondent's submissions construing the petition as raising a federal

8

due process argument. Those filings together would have put the state courts on notice that petitioner's challenge included a federal constitutional claim. *See Daye*, 696 F.2d at 192 n.5 (explaining that "the state court might be alerted" that a defendant is raising a federal claim "by briefs filed by the state in opposition") (citing cases). Petitioner therefore exhausted his argument that ambiguity in his plea bargain violated due process.

B. Merits

Petitioner's due process challenge to asserted ambiguity in his plea bargain fails on the merits under AEDPA's deferential standards of review. As discussed above, the scope of federal review under AEDPA depends on whether the state court adjudicated petitioner's claim on the merits. 28 U.S.C. § 2254(d); *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009). "To determine whether a state court has disposed of a claim on the merits," a federal court considers "'(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits.'" *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 314 (2d Cir. 2001)). A state court "need not mention the argument raised or cite relevant case law in order for its ruling to constitute an 'adjudication on the merits.'" *Brown v. Artuz*, 283 F.3d 492, 498 (2d Cir. 2002) (quoting *Aparicio*, 269 F.3d at 94); *see Sellan*, 261 F.3d at 311. Even when a state court rejects a federal claim without explicitly addressing it, "a federal habeas court must presume that the federal claim was adjudicated on the merits." *Williams*, 568 U.S. at 301. Applying that framework, the state court decisions in petitioner's case is properly understood as rejecting petitioner's federal due process claim on the merits. While the Appellate Division did

9

not explicitly analyze petitioner's due process claims, there is "nothing in its decision to indicate that the claims were decided on anything but substantive grounds." *Aparicio*, 269 F.3d at 94.

Petitioner is not entitled to relief under the AEDPA standards that apply when a state court has adjudicated a claim on the merits, because he has not shown that the state court decisions rejecting his due process challenge based on purported ambiguities in his plea bargain contravened "clearly established Federal law, as determined by the Supreme Court" or rested on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1)-(2). While petitioner asserts that ambiguous conditions on his plea bargain deprived him of due process, the Second Circuit has previously explained that the Supreme Court has never held that federal due process requires that the conditions placed on a sentence promised in a plea agreement be communicated to the defendant unambiguously. *Mask v. McGinnis*, 252 F.3d 85, 89-90 (2d Cir. 2001). The only Supreme Court case on which petitioner relies in suggesting otherwise—*North Carolina v. Alford*, 400 U.S. 25 (1970), *see* Reply Br. at 8-9—is inapposite. The Court in *Alford* held that a defendant's decision to accept a plea solely to avoid the death penalty could still be considered voluntary and intelligent. 400 U.S. at 39. It did not address whether due process requires that plea conditions must be communicated unambiguously.

Petitioner's due process claim also falls short because petitioner did not in fact receive an enhanced sentence for violating ambiguous conditions imposed by the trial court. Prior to sentencing, the trial court warned petitioner that to receive the sentence that was part of the plea bargain, he needed to "cooperate completely" with Probation Department, answer the Probation Officer's questions "truthfully," and not deny attempting to kill his wife. Plea Colloquy Tr. 12:1-11. The court further explained that "[i]f there's anything that you tell them that's not what you

told me," he would not receive the sentence in the plea bargain. *Id.* at 12:13-16. The court thus made clear that the defendant "was required to answer the questions posed by the Department of Probation truthfully and in a manner consistent with what he told the court during the plea proceedings." *Takie*, 172 A.D.3d. at 1250. The defendant failed to comply with that express condition because he gave an account that substantially differed from the one he provided in court, in an apparent attempt to minimize his culpability. At the plea colloquy, petitioner admitted to intentionally attempting to cause his wife's death by cutting her with a knife. Plea Colloquy Tr. 10:20-25. Yet when speaking with the Probation Officer, petitioner was at most agnostic on whether he had committed the crime, stating that he had "blacked out" and later "was told that he had cut his wife." Sentencing Hr'g Tr. 24:6-13; *see* Reply Br. at 6. By offering a minimized account that contained no admission of guilt, petitioner breached the court's clear directive that petitioner must cooperate fully with the Probation Office and provide an account consistent with petitioner's admissions to the court.[2] Petitioner's due-process challenge thus fails both because it rests on the mistaken premise that his sentence was enhanced based on an ambiguous agreement and because the legal principle on which he relies does not constitute clearly established law.

Claim 2 – Petitioner's Enhanced Sentence Violated Due Process Because He Did Not Understand the Terms of His Plea

Petitioner's argument that his due process rights were violated because he did not fully understand the terms of his plea deal is procedurally barred and lacks merit.

---

[2] Petitioner argues in his reply brief that he should not be bound by conditions that the trial court imposed on his plea bargain because he was never specifically asked if he agreed to them and was not given an opportunity to "take back" his plea after they were imposed. *See* Reply Br. at 5, 8. That argument was not raised in the state courts and is therefore procedurally barred. It also lacks merit. The trial court made clear to petitioner that he was not obliged to plead guilty. Plea Colloquy Tr. 3:5-13. And after the court imposed the common condition that petitioner must cooperate with the Probation Office and give a truthful account of his crime, *see People v. Becker*, 80 A.D.3d 795, 796 (3d Dep't 2011) (citing cases imposing this condition), petitioner voiced no objection, *see* Plea Colloquy Tr. 11:23-12:18. Petitioner thus cannot credibly argue that would have "taken back" the plea had he been invited to do so after the condition was imposed.

A. <u>Procedural Bar</u>

Petitioner has procedurally defaulted his claim that his enhanced sentence violated his right to due process because he did not understand the conditions attached to his plea. Because petitioner did not argue on his direct appeal that he did not understand the conditions of his plea, he failed to fairly present this claim to the state courts as required by 28 U.S.C. § 2254(b)(1)(A). *See Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005). That claim can no longer be raised in state court because New York law allows only one direct appeal, *see* N.Y. Crim. Proc. Law § 450.10(1); N.Y. Ct. R. § 500.10(a); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991), which petitioner has already taken. Further, petitioner's claim could not be brought through a collateral challenge since it could have been brought on direct appeal. *See* N.Y. Crim. Proc. Law § 440.10(2)(c); *Grey*, 933 F.2d at 120. Accordingly, petitioner's claim is procedurally defaulted. *See Ramirez*, 280 F.3d at 94.

Petitioner cannot meet the cause-and-prejudice standard required to overcome his default. *Dretke*, 541 U.S. at 388. Petitioner alleges no cause for his failure to raise this claim in state court. Indeed, the section of petitioner's habeas petition that asks him to explain why this claim was not raised in state court is left blank. *See* Pet. at 8. Moreover, the factual and legal basis of this claim—petitioner's lack of formal education, "heavy Indian accent" and unfamiliarity with the U.S. legal system—were known to petitioner and his counsel during the state court proceedings, undercutting any potential excuse. *See* Pet. at 7; *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (noting that a procedural default may be excused if "the factual or legal basis for a claim was not reasonably available" at the time that the claim needed to be preserved). Finally, because petitioner does not allege actual innocence, he cannot overcome his default by showing that leaving his sentence intact would cause a miscarriage of justice. *See Coleman*, 501 U.S. at 750; *Hyman*, 927 F.3d at 656.

Petitioner's claim that his assent to the conditions of his plea agreement was not knowing and intelligent is thus procedurally barred.

B. Merits

Petitioner's claim that he did not understand the conditions of his plea also fails on the merits. Acceptance of a guilty plea must be "a knowing and intelligent act done with 'sufficient awareness of the relevant circumstances and likely consequences.'" *United States v. Rossillo*, 853 F.2d 1062, 1064 (2d Cir. 1988) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). A plea is knowing and intelligent "if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way." *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988), *cert. denied*, 488 U.S. 890 (1988). Because of the "strong societal interest in the finality of guilty pleas," *United States v. Rosen*, 409 F.3d 535, 546 (2d Cir. 2005), "the representations of the defendant . . . as well as any findings made by the judge accepting [a] plea . . . carry a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Under these principles, petitioner's claim that he did not understand the conditions of his plea fails on the merits. Plaintiff repeatedly affirmed during his plea colloquy, under oath, that he understood the terms and consequences of his plea deal. Sentencing Hr'g Tr. 3:7-25, 4:13-22, 5:2-21, 7:3-12, 10:1-19, 11:21-12:18. Crucially, after explaining to petitioner that he must provide the Probation Department with a truthful account of his crime consistent with his in-court admissions in order to receive a sentence of 13 years rather than 17 years, the court asked petitioner if he understood this condition. *Id.* at 12:5-17. Petitioner affirmed under oath that he did. *Id.* at 12:18. Consistent with these affirmations, the trial court found that petitioner "absolutely understands what is being said to him and what he is saying other people." *Id.* at 62:21-63:9.

13

Nothing in the record upsets the "strong presumption of verity" to which these representations and determinations are entitled. *Blackledge*, 431 U.S. at 73-74. While petitioner points to "literary and language barriers," Pet. at 7, he acknowledged in his sentencing hearing that English is his first and only language, *see* Sentencing Hr'g Tr. 51:20-23. Moreover, petitioner repeatedly confirmed during the plea colloquy that he understood what was going on. Plea Colloquy Tr. 3:7-13:18. Petitioner also demonstrated understanding of the proceedings by seeking clarification from the court on particular issues and asking follow-up questions where appropriate. *Id.* at 6:21-10:17. The record thus fully supports the conclusions of the trial and appellate courts that "the defendant clearly acknowledged, understood, and accepted the conditions imposed" on his plea. *Takie*, 172 A.D.3d at 1250. And even if the record were less clear, the state court's factual findings are entitled to a presumption of correctness that petitioner has not rebutted. *See* 28 U.S.C. § 2254(e)(1). Petitioner's claim that his acceptance of the plea agreement was not knowing and intelligent thus also fails on the merits.

## CONCLUSION

Petitioner's application for a writ of habeas corpus is denied. Because petitioner has not made a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253, I also deny a certificate of appealability.

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated:  Brooklyn, New York
        July 17, 2020